CITY OF CINCINNATI, APPELLEE, *v.* LATTIMORE, APPELLANT.

(No. 11761—Decided March 13, 1972)

*Mr. William A. McClain, Mr. Ralph E. Cors* and *Mr. John W. Dressing,* for appellee.
*Mr. Thomas E. Murphy,* for appellant.

SHANNON, J. This is an appeal from a judgment of the Hamilton County Municipal Court and was heard upon the record composed according to Rule 9, Ohio Rules of Appellate Procedure.

Defendant, the appellant herein, is a thirty-one year old mother of four children and a full time university student, and was employed at the Cincinnati General Hospital as a social service worker. On April 30, 1971, she was seated at the social service desk and made a telephone call to the registration desk located in the same room about one

hundred feet away from her. When the telephone at the registration desk was answered, the defendant immediately said, "There's a bomb going off in 15 minutes."

It is the contention of defendant that when she made the call she expected the telephone to be answered by a friend of long-standing upon whom she wished to play a joke. Admittedly, defendant did not identify herself or ascertain who was answering before making the statement about the "bomb."

In fact, the telephone call was received by the admitting clerk of the hospital. That individual responded to the message by calling the hospital operator who, in turn, alerted the security forces. They evacuated "everybody," putting "patients, visitors, doctors, all out in the parking lot."

During this same period of time, defendant came to the admitting clerk and said "that she was only joking," and repeated such statement to a member of the security force.

Defendant was charged with violating R. C. 2901.44, and the trial was had without intervention of a jury. The court found the defendant guilty as charged, fined her the costs of court, but remitted the same.

R. C. 2901.44, as it applies here, provides:

"No person shall, through the use of the * * * telephone * * * willfully impart or convey any threat, or false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to damage or destroy any building * * * for the purpose of interfering with its use for * * * charitable * * * or civic objectives, or of intimidating any person pursuing such objectives."

That defendant used the telephone willfully, that is, deliberately, intentionally and voluntarily, to convey false information, which she knew to be false, is without question. With complete candor, she has admitted that.

It is axiomatic that one is presumed to intend the natural and probable consequences of his voluntary act. Here, the consequences of the utterance of the words

"There's a bomb going off in 15 minutes" were, and should have been to any person with reason, completely predictable.

Anyone with a modicum of sense would have begun, instantly, to clear the area of all those who would be endangered by an explosion, and that is exactly what the admitting clerk who received the call did. Just as sensibly, those who were instructed to leave the building did so. For the moment, then, the operation of the hospital for its intended purposes ceased, or at the very least was seriously interfered with. To us, such result was the natural and reasonable consequence of the conveyance of the false information.

However, the presumption in law that a man intends the reasonable and natural consequences of acts deliberately done is not absolute, and circumstances in a particular case may show the absence of such intent.

In the case at bar, defendant has attempted to rebut the presumption of intent by testimony she recanted quickly and sought to prevent the consequences flowing from her act. That she did hasten to the desk to which she had telephoned and did tell the admitting clerk that she "was only joking" is unquestioned, but is that fact sufficient to avoid culpability?

The record demonstrates that by the time defendant sought to recant, forces were moving; that is, the consequences of the original act had been effected, and the operation of the hospital was interrupted. However prompt the efforts of defendant were to turn the situation about, they were too late.

If we were to conclude otherwise, we would invite chaos. The defendant, a mature woman of sufficient intelligence to be a student in a university, seeks to avoid guilt by pleading that she believed her telephoned warning that a bomb was about to explode in a busy, crowded hospital admissions ward would be received by an old friend who would recognize the caller's voice and not be duped. If we countenance such a defense, we would, perforce, emasculate the statute. Disruption of the routine of vital in-

stitutions could be accomplished with impunity merely by the ''prankster'' shouting ''April fool!''

While our belief that sound public policy demands that such acts be discouraged by the speedy prosecution of the miscreants is certainly part of the rationale of our affirmance of the judgment of the trial court, it is not the only basis. We find that before an accused can be found guilty of a violation of R. C. 2901.44, that person must have intentionally conveyed a threat or false information, known to be so, concerning an attempt, actual or alleged, to damage or destroy real or personal property and such communication must have interfered with the specified uses of the property so threatened or intimidated a person pursuing such uses.

Here, the record fully supports the judgment of guilt and must, therefore, be affirmed.

*Judgment affirmed.*

HESS, P. J., and YOUNG, J., concur.